# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2448

_____

David W. Bailey,                                            *
                                                           *
         Appellant,                              *
                                                           *   Appeal from the United States
    v.                                                    *   District Court for the
                                                           *   Western District of Missouri.
Department of Elementary and                               *
Secondary Education, a branch of the                       *
government of the State of Missouri;                       *
Ronald W. Vessell, in his individual                       *
and official capacities; Neil Scully, in                   *
his individual and official capacities,                    *
                                                           *
         Appellees.                              *

_____

Submitted: February 14, 2006
Filed:   June 23, 2006

_____

Before RILEY, MELLOY, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

David W. Bailey (Bailey), a former employee of the Missouri Department of Elementary and Secondary Education, sued his employer and his supervisors (collectively, DESE), alleging they terminated his contract in response to protected speech Bailey made on matters of public concern. Following a jury trial, the jury found certain instances of Bailey's speech were motivating factors in DESE's

decision to terminate Bailey's contract. After the verdict, the district court[1] entered judgment as a matter of law against Bailey, holding Bailey's speech was not protected under the First Amendment, and even if it were, Bailey's termination was justified based on the balancing test enunciated in Pickering v. Board of Education, 391 U.S. 563 (1968). Bailey appeals, and we affirm.

## I.    BACKGROUND

Bailey is a psychologist who was under contract with DESE to provide consultation services for DESE's Social Security Disability Determinations Unit (DDU). Bailey's consulting duties entailed reviewing disability benefits cases to determine whether the claims contained proper evidence supporting an award or denial of benefits.

In approximately 1999, Missouri and nine other states began a pilot program called "prototype" instituted by the Social Security Administration (SSA) to implement new procedures designed to streamline the benefits application review process. As part of the procedures, DESE was permitted to use Speech and Language Pathologists (SLPs) to help assess speech and language pathologies in child benefits cases. Before this federal regulatory change, consultants like Bailey offered opinions about an applicant's mental health as well as speech and language problems raised in an application. After the change, SLPs could sign off on approval of claims based on speech and language pathologies; thus, it was common for both an SLP and a mental health consultant to review the same file for separate consideration.

In implementing the prototype procedures, DDU Deputy Administrator Neil Scully (Scully) adopted a target allowance rate representing the level of claim allowance under the old procedures. The goal was that the allowance rate under the

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

prototype procedures should be at least equal to the allowance rate under the old system.

Bailey expressed concerns about what he believed to be a quota system, contending some claimants, especially children with speech and language pathologies, were being awarded benefits to which they were not entitled. Bailey testified he consistently spoke out to supervisors and managers about his concerns. Others testified Bailey's position was a "well-known fact."

In early 2001, Scully called a meeting with Bailey and other management employees in the office of Bailey's supervisor, Carolyn Otterson (Otterson), to address problems with Bailey's unwillingness to sign off on SLP decisions, particularly one SLP's complaint about Bailey's denial of a case. Bailey testified he

> reiterated why I was making the conclusions I was making [about particular cases], that I looked at things on a case by case basis and that I was following the regulations. . . . And the main thrust of that meeting was that Mr. Scully liked the numbers he was getting. . . . He told me to comply with that in no uncertain terms if I wanted to stay with the program.

Bailey claims he expressed his concern that "blind adherence to an allowance rate would conflict with a consultant's professional judgment and the case by case nature of the system," and Scully told Bailey he better "stick with the program."

In the summer of 2001, Bailey began to have personality clashes and professional disagreements with a fellow consultant. On August 30, 2001, Bailey and Scully met at a conference. They privately argued about the SLP program and a report Scully had received about Bailey engaging in unprofessional conduct with an SLP. Other complaints about Bailey climbed the supervisory ladder to Scully, who eventually forwarded the complaints to his boss, DESE Assistant Commissioner

Ronald Vessell (Vessell). On September 10, 2001, Bailey drafted and sent via facsimile a letter to Vessell, making "an official complaint in regards to . . . Scully" and detailing professional disagreements Bailey and Scully had over Scully's award target goal and the SLP program. On the same day, Vessell and Scully met to discuss Bailey, and Vessell terminated Bailey's contract. Vessell claims he did not read the letter before terminating Bailey's contract, but the jury found the letter was a "motivating factor" in DESE's decision to terminate Bailey's contract.

Before trial, the district court asked the parties to draft proposed jury instructions that "specifically describe the speech which forms the basis for the claim." Bailey failed to identify specifically the particular speech, instead proposing as an instance of speech, "Plaintiff's repeated, open criticism about established allowance quotas and wrongful allowances as stated to Neil Scully and supervisors" and Bailey's September 10, 2001, letter to Vessel. The district court then drafted its own instructions, identifying three specific instances of alleged speech for jury consideration: (1) Bailey's statements during the early 2001 meeting in Otterson's office; (2) Bailey's statements to Scully at the conference on August 30, 2001; and (3) the September 10, 2001, letter to Vessell.

During the four-day trial, the district court, over Bailey's objection, sua sponte drafted special jury interrogatories regarding the balancing of Bailey's interests against those of DESE, based on the Pickering balancing test. Pickering, 391 U.S. at 568-73; see Connick v. Myers, 461 U.S. 138, 166-67 (1983). The jury determined Bailey's statements during the meeting in Otterson's office and Bailey's letter to Vessell, but not Bailey's statements to Scully at the conference, were motivating factors in DESE's decision to terminate Bailey's contract. The jury also found, in response to the Pickering special interrogatories, Bailey's statements during the meeting in Otterson's office and Bailey's letter to Vessell "cause[d], or could . . . have caused, disharmony or disruption in the working relationship between those working for [DESE]," and Bailey's letter "impair[ed] his ability to perform his duties."

-4-

Following trial, the district court directed judgment as a matter of law in DESE's favor, holding Bailey's speech was not entitled to First Amendment protection, and even if it were, application of the Pickering balancing test favored DESE.

## II.    DISCUSSION

We review de novo the district court's grant of judgment as a matter of law. See Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998).  In doing so, we draw all reasonable inferences in Bailey's favor, and we neither make credibility determinations nor weigh the evidence.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000) (citations omitted).

### A.    Speech Protected by the First Amendment

Bailey argues the district court erred in directing judgment against him and holding his speech was not entitled to First Amendment protection.[2] Public employee speech is protected from retaliation, in certain circumstances, if the speech addresses a matter of public concern. Garcetti v. Ceballos, 126 S. Ct. 1951, 1958 (2006) (citing

---

[2]To succeed on a First Amendment retaliation claim, a public employee plaintiff must show: (1) he engaged in protected speech, that is, speech on a matter of public concern; (2) his interest as a citizen in commenting on the issue outweighs the public employer's interest in promoting efficient public service; and (3) his speech was a motivating factor in the action taken against him.  Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 801 (8th Cir. 2004), cert. denied, 543 U.S. 956; see Garcetti v. Ceballos, 126 S. Ct. 1951, 1958 (2006) (citing Connick, 461 U.S. at 147, Pickering, 391 U.S. at 568).  The first issue is a question of law, and was the subject of the district court's judgment.  See Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 395 (8th Cir. 1995).  The second issue is the Pickering balancing test.  It is a question of law and was also the subject of the district court's ruling, although its underlying factual questions should be and were submitted to the jury.  See Belk v. City of Eldon, 228 F.3d 872, 881 (8th Cir. 2000).  The third issue is one of fact and was determined by the jury's verdicts.  See de Llano v. Berglund, 282 F.3d 1031, 1036 (8th Cir. 2002).

Connick, 461 U.S. at 147, Pickering, 391 U.S. at 568); Shands v. City of Kennett, 993 F.2d 1337, 1344-46 (8th Cir. 1993). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Garcetti, 126 S. Ct. at 1968. When the state is acting as the employer of a public employee, we focus "on the role the employee . . . assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties . . . ; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution." Cox v. Dardanelle Pub. Sch. Dist., 790 F.2d 668, 672 (8th Cir. 1986) (footnote and citation omitted). When the employee's speech includes matters of both public concern and personal interest, we

> must analyze the content, form, and context of the speech to determine whether the speaker was acting primarily as a concerned citizen or as an employee. If the speech was mostly intended to further the employee's private interests rather than to raise issues of public concern, her speech is not protected, even if the public might have an interest in the topic of her speech.

Schilcher v. Univ. of Ark., 387 F.3d 959, 963 (8th Cir. 2004).

### 1.    Jury Instructions

Bailey preliminarily claims the district court abused its discretion by failing to adopt Bailey's proposed instruction, and instead limiting the jury to three instances of speech. We review for abuse of discretion a claim of instructional error. B & B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010, 1012 (8th Cir. 2001). "[W]e must determine whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury. . . . [J]ury instructions do not need to be technically perfect or even a model of clarity." Id. at 1012 (citations and quotations omitted).

-6-

Although provided the opportunity to submit and resubmit proposed jury instructions, Bailey failed to describe specifically for the district court all the speech forming the basis for his claim. The district court was well within its discretion to submit its own instructions, which relied on the evidence submitted at trial and followed the recommendations of the Eighth Circuit Model Jury Instructions. See Eighth Cir. Manual of Model Civil Jury Instructions § 5.71 n.5 ("To avoid difficult questions regarding causation, it is very important to specifically describe the speech which forms the basis for the [retaliation] claim. Vague references . . . often will be inadequate; instead, specific reference to the time, place and substance of the speech . . . is recommended.").

### 2.      Meeting in Otterson's Office

Bailey argues the statements he made during the meeting with Scully and others in Otterson's office in early 2001 touched upon matters of public concern. Bailey claims he was acting as "a concerned citizen expressing reservations about improper methods used by a public program which could lead to the misuse of public funds," specifically disagreeing with how SLPs were handling speech and language issues, and expressing "his concern that blind adherence to an allowance rate would conflict with a consultant's professional judgment and the case by case nature of the system."

While Bailey's speech may have tangentially involved a matter of public concern, his speech was concerned primarily with furthering his own interests. Bailey spoke about how the prototype and SLP programs, as implemented by Scully through the target allowance rate, conflicted with a counselor's professional judgment and would lead to false positives and misapplication of public funds by DESE. We generally regard expenditure of public funds to be a matter of public concern, see Kincade, 64 F.3d at 396; however, Bailey's protests only peripherally pertained to public fund payouts. Bailey's testimony about the meeting demonstrates he was concerned not with how DESE was discharging its public duties, but with how

-7-

Scully's implementation of new SSA policies affected such internal DESE policies as how counselors such as Bailey could make case by case benefits determinations.

The circumstances of the meeting also demonstrate Bailey's motivation in raising these concerns was not for public interest. The private meeting was called by Scully and arose not out of Bailey's "efforts to bring these [concerns] to light," <u>see</u> <u>Campbell v. Ark. Dep't of Corr.</u>, 155 F.3d 950, 959 (8th Cir. 1998) (citing <u>Connick</u>, 461 U.S. at 148), but out of an SLP's complaint against Bailey concerning Bailey's denial of a particular case, and Bailey's general unwillingness to sign off on SLP decisions. Scully directed pointed questions at Bailey who generally responded with yes or no answers. The meeting's focus was Bailey's unwillingness to follow DESE rules. Any public interest issues Bailey expressed were secondary, never appealed, and not made public. The district court therefore correctly concluded Bailey's statements during the meeting in Otterson's office did not deserve First Amendment protection. <u>See</u> <u>Garcetti</u>, 126 S. Ct. at 1960.

### 3. Letter to Vessell

Bailey also argues the statements he made in his September 10, 2001, letter to Vessell touched upon matters of public concern. The letter contained such phrases as (1) consultants being asked "to sign off on cases, saying we agree with cases we really do not"; (2) "Mr. Scully has gone against federal rules and regulations"; (3) "Mr. Scully's behaviors and actions in relation to me, the SLP project, and state and federal laws and guidelines have been inappropriate, and may in fact be fraudulent"; (4) "Mr. Scully has acted unprofessionally and unethically with me"; (5) "some of the policies and actions being taken by Mr. Scully will have state and national impact and implication"; and (6) Bailey considered himself "a perceived government whistle blower."

Bailey's letter appears tangentially to touch upon a matter of public concern, but the letter primarily involved personal conflicts with Bailey's supervisor Scully.

The letter discusses (1) Scully's actions toward Bailey and the fact Scully had Bailey under investigation; (2) Scully's "angry, accusatory, and threatening manner"; and (3) Bailey's "primary complaints with Mr. Scully." Bailey's vague comments regarding fraud and legal violations appear only as support for Bailey's personal problems with Scully. Furthermore, Bailey did not address the letter to the public outside of DESE, but only to Vessell, the agency's Assistant Commissioner, a "factor to be considered." Buazard v. Meridith, 172 F.3d 546, 549 (8th Cir. 1999). Finally, and perhaps most importantly, Bailey's letter concluded with the statement, "I consider any time I spend addressing this matter with you or the agency to be services I am giving the state as a consultant," clearly pointing to a conclusion Bailey was not acting as a concerned public citizen, but as an employee concerned with being paid for his time. See Garcetti, 126 S. Ct. at 1960 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.") Buazard, 172 F.3d at 548 ("When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern."). As with Bailey's statements during the meeting in Otterson's office, we hold the district court correctly concluded Bailey's letter to Vessell did not touch upon a matter of public concern.

**B.      Pickering Balancing Test**

Even when a public employee speaks as a citizen on a matter of public concern, "the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences." Garcetti, 126 S. Ct. at 1961. In directing judgment against Bailey, the district court held, even if Bailey's speech did touch upon a matter of public concern, judgment against him was appropriate because the Pickering balancing test weighs in DESE's favor. Bailey disagrees, arguing (1) the Pickering test does not apply to his case; (2) even if it did, the district court's special interrogatories were in error; and (3) even if they were not, application of the test weighs in his favor.

-9-

### 1.  Whether the <u>Pickering</u> Balancing Test Applies

Bailey first argues the <u>Pickering</u> balancing test does not apply to his case because DESE (1) did not terminate Bailey's contract for making protected speech, thus the speech could not have disrupted the workplace; and (2) failed to proffer sufficient evidence that Bailey's speech had an adverse impact on his department. <u>See</u> <u>Sexton v. Martin</u>, 210 F.3d 905, 911-12 (8th Cir. 2000).

Bailey's first argument fails. Just because DESE denied Bailey made protected speech or it terminated his contract for making the speech does not mean DESE is then estopped from alternatively arguing Bailey's speech disrupted the workplace. Employee speech can disrupt a workplace without rising to a level meriting discipline by termination.

Bailey's second argument also is unpersuasive.  Regarding Bailey's speech during the meeting in Otterson's office, Bailey argued with his supervisor Scully and other management level employees about the role SLPs were playing in disability determinations.  The meeting became quite heated, with Scully eventually giving Bailey an ultimatum to behave or be fired.  Bailey's speech regarding the SLPs eventually led to another confrontation with Scully at a conference.  This is sufficient evidence of disruption.

Regarding Bailey's letter to Vessell, in determining whether particular speech caused disruption in the workplace and therefore is not protected, we have held "[e]vidence of actual disruption . . . is not required in all cases." <u>Shands v. City of Kennett</u>, 993 F.2d 1337, 1344 (8th Cir. 1993); <u>see</u> <u>also</u> <u>Germann v. City of Kansas City</u>, 776 F.2d 761, 765 (8th Cir. 1985) ("It is not necessary 'for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.'" (quoting <u>Connick</u>, 461 U.S. at 152)).  Although such evidence is not required, sufficient evidence of disruption exists in this case.  Here, despite Vessell's claim he did not read Bailey's letter before

firing him, the jury found the letter was a motivating factor behind Bailey's termination. The letter accused Bailey's superiors of fraud and legal and ethical violations. Such accusations are sufficient evidence of potential workplace disruption.

### 2. Jury Instructions

Bailey argues the district court abused its discretion in submitting the special interrogatories. We disagree. As described <u>supra</u>, the interrogatories were based on sufficient evidence at trial Bailey's speech disrupted the workplace. The interrogatories asked whether Bailey's speech "cause[d], or could . . . have caused, disharmony or disruption in the working relationship between those working for [DESE]," or "impair[ed] [Bailey's] ability to perform his duties." The interrogatories properly stated the first and sixth factors of the <u>Pickering</u> balancing test. <u>See</u> <u>Bowman v. Pulaski County Special Sch. Dist.</u>, 723 F.2d 640, 644 (8th Cir. 1983) (listing first factor as "the need for harmony in the office or work place" and sixth factor as "whether the speech impeded the employee's ability to perform his or her duties" (citing <u>Connick</u>, 461 U.S. at 151-52)).

### 3. Application of the <u>Pickering</u> Balancing Test

Finally, Bailey argues the district court improperly applied the <u>Pickering</u> balancing test. The test balances the competing interests of the government-employer and citizen-employee by analyzing six factors:

> (1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or could cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties.

<u>Id.</u>

Here, the jury answered affirmatively when asked whether Bailey's speech during the meeting in Otterson's office and Bailey's letter to Vessell caused or could have caused workplace disharmony. The evidence regarding Bailey's numerous conflicts with SLPs, fellow counselors, and his supervisors shows the working relationships within the DDU were required to be close. Bailey's speech arose in the context of a meeting to discuss his conflicts with SLPs, and in the context of an accusatory letter sent as a complaint criticizing Bailey's behavior. Bailey's speech also lacked sufficient counterbalancing public interest, and was more concerned with his conflicts with Scully over internal procedures. The jury found Bailey's speech "impair[ed] [his] ability to perform his duties." For these reasons, we hold even if Bailey's speech did touch upon a matter of public concern, the <u>Pickering</u> balancing test weighs in favor of DESE.

## III.  CONCLUSION

For the reasons stated, we affirm the district court's entry of judgment as a matter of law in DESE's favor.

———————————————

-12-